1998 ME 28

**Thomas FLANDERS**

v.

**Peter COOPER**

and

**Greater Brunswick Physical Therapy.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1997.

Decided Feb. 11, 1998.

Paul F. Macri (orally), Tyler N. Kolle, Berman & Simmons, P.A., Lewiston, for plaintiff.

James E. Fortin (orally), Martica S. Douglas, Portland, for defendants.

William C. Nugent, Portland, for amicus curiae Erin Miller.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Thomas Flanders appeals from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) dismissing his medical malpractice notice of claim pursuant to M.R. Civ. P. 12(b)(6). Flanders contends that the court erred in its determination that his notice of claim failed to state a claim upon which relief can be granted. We disagree and affirm the judgment.

## I.

[¶ 2] Flanders's daughter sought treatment from Greater Brunswick Physical Therapy for temporomandibular joint syndrome. Peter Cooper, a licensed physical therapist,[1] treated her for eighteen months. Flanders's notice of claim alleges that during the course of this treatment, Cooper practiced beyond the authorized scope of his physical therapy license, employed "bizarre and inappropriate" treatment modalities, and implanted in the mind of Flanders's daughter false memories of sexual abuse perpetrated by Flanders. His notice of claim further alleges that Greater Brunswick Physical Therapy failed to supervise Cooper adequately.

[¶ 3] We treat a notice of claim challenged by a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) as a complaint. *Choroszy v. Tso,* 647 A.2d 803, 805 n. 1 (Me.1994). As we stated in *Shaw v. Southern Aroostook Community School District:*

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted. In reviewing the trial court's dismissal of an action, we examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle

---

1. Pursuant to 32 M.R.S.A. § 3113–A (Supp. 1997), no person may practice physical therapy unless licensed in accordance with Maine's Physical Therapy Practice Act.

the plaintiff to relief pursuant to some legal theory.

683 A.2d 502, 503 (Me.1996) (quotations and citations omitted). To determine if the facts alleged in Flanders's notice of claim entitle him to relief, we must resolve an issue of first impression in Maine: whether a health care professional whose negligent treatment of a patient induced false memories of sexual abuse by a third party owed a duty of care to that injured third party. We decline to impose such a duty.[2]

## II.

[¶ 4] "Fundamentally, whether one party owes a duty of care to another is a question of law." *Trusiani v. Cumberland and York Distrib., Inc.*, 538 A.2d 258, 261 (Me.1988). This question "necessarily involves considerations beyond the factual determination that a particular injury was a foreseeable consequence of some particular conduct ... [and] is in turn dependent on recognizing and weighing relevant policy implications." *Cameron v. Pepin*, 610 A.2d 279, 282 (Me.1992). We have repeatedly recognized that "'[i]n the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall.'" *Trusiani*, 538 A.2d at 261 (quoting Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 15 (1953)).

[¶ 5] Flanders argues that our decision in *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364 (Me.1987), "establishes beyond any question that the law in Maine is that caregivers owe a duty of reasonable care to third persons who may foreseeably be injured by the caregiver's negligence." Flanders states the holding of *Joy* far too broadly. The plaintiff in *Joy* was a motorcyclist injured in a collision with a vehicle driven by a patient

whose treatment for an eye abrasion from an emergency room physician included an eye patch. *Id.* at 1364–65. Joy asserted that the physician's failure to warn the patient that he should not drive while wearing the eye patch constituted negligence that was actionable by Joy. *Id.* at 1365. We vacated the Superior Court's summary judgment for the physician and the hospital, holding that "when a doctor knows, or reasonably should know that his patient's ability to drive has been affected, he has a duty to the driving public as well as to the patient to warn his patient of that fact." *Id.* at 1366.

[¶ 6] Although the warning discussed in *Joy* was important to the safety of the patient, and hence could be viewed as a warning required by his treatment, there was no allegation in *Joy* that the treatment for the eye abrasion was negligent. The warning about the risks of driving dealt only with the aftermath of the treatment. Thus, the recognition of the physician's duty to the driving public to warn the patient of the risks of driving did not implicate the treatment decisions of the physician.

[¶ 7] Flanders also relies upon *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), for the proposition that a therapist has "a duty to avoid injuring a third party through the effects of his therapy." That statement is a misreading of the *Tarasoff* decision. The patient in *Tarasoff* informed his therapist that he intended to kill an unnamed young woman, readily identifiable as the potential victim. *Id.* 131 Cal.Rptr. at 21, 551 P.2d at 341. Two months later the patient killed her. *Id.* 131 Cal.Rptr. at 19, 551 P.2d at 339. The *Tarasoff* court held that the therapist's failure to warn the victim of the danger posed by the patient could support the negligence claim of the victim's par-

**2.** Flanders would phrase the issue more narrowly: whether a physical therapist improperly practicing as a psychotherapist, and thereby inducing false memories of sexual abuse, owed a duty of care to an injured third party. Flanders argues that the resolution of the duty issue, thus narrowed, would have no implications for the relationship between patients and health care professionals who practice within the scope of their licenses. This reasoning is unpersuasive. It

would be bizarre to hold that health care professionals practicing outside the scope of their licenses have a duty of care to third parties that health care professionals practicing within the scope of their licenses do not have. If we were to impose such a duty, the duty of the health care professional to third parties would be to refrain from negligent treatment, whether the specific practices at issue were within or without the scope of the professional license.

ents against the therapist.[3] *Id.* 131 Cal.Rptr. at 22, 551 P.2d at 342. There was no allegation in *Tarasoff* that the therapist negligently treated the patient. The danger posed by the patient to the victim was not an effect of the patient's therapy. The duty to warn recognized in *Tarasoff* did not implicate medical judgments that the therapist must make during the course of treatment about the appropriate care of the patient.[4]

[¶ 8] Unlike the duty to warn recognized in *Joy* and in *Tarasoff,* the duty that Flanders advocates is a duty of medical treatment that goes to the core of the relationship between a patient and a health care professional. A health care professional who suspected that a patient had been the victim of sexual abuse and who wanted to explore that possibility in treatment would have to consider the potential exposure to legal action by a third party who committed the abuse. "The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." *Maloney v. Conroy,* 208 Conn. 392, 545 A.2d 1059, 1064 (1988). Although procedurally we must accept the allegation in this case that negligent treatment by a health care professional resulted in the implantation of false memories of sexual abuse, we must assess the impact of the duty urged by Flanders on the willingness of the competent professional to pursue proper treatment in the care of patients. Our recognition of the duty Flanders advocates might restrict the treatment choices of health care professionals, and hence it would intrude directly on the professional-patient relationship. We are not prepared to sanction such an intrusion.

### III.

[¶ 9] We are also concerned that recognition of the duty urged by Flanders would undermine laws enacted by the Legislature to enhance efforts to uncover and to investigate possible instances of child abuse. For example, section 4011(1) of Title 22 states:

> When, while acting in a professional capacity, an adult who is a medical or osteopathic physician, resident, intern, emergency medical services person, medical examiner, physician's assistant, dentist, dental hygienist, dental assistant, chiropractor, podiatrist, registered or licensed practical nurse, . . . home health aide, medical or social service worker, psychologist, child care personnel, mental health professional, . . . knows or has reasonable cause to suspect that a child has been or is likely to be abused or neglected, that person shall immediately report or cause a report to be made to the department.

22 M.R.S.A. § 4011(1) (1992 & Supp.1997). Anyone making a report in good faith pursuant to § 4011(1) "is immune from any criminal or civil liability for the act of reporting. . . ." 22 M.R.S.A. § 4014(1) (1992). Negligent reporting is not actionable.

[¶ 10] Although the negligent reporting of sexual abuse is not at issue in this case,[5] there is an inescapable link between the duty to a third party urged by Flanders and the willingness of a health care professional to pursue a course of treatment that would cause a child to recognize that sexual abuse has occurred. Such recognition might prompt the child to report the abuse to other

---

**3.** As the *Tarasoff* court noted, the California legislature had already balanced the privacy rights of the patient against the public interest in safety from violent assault by creating a limited exception to the psychotherapist-patient privilege "if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threat of danger." *Id.* 131 Cal.Rptr. at 27, 551 P.2d at 347 (quoting Cal. Evid.Code § 1024 (West 1997)).

**4.** We recognize that a therapist's disclosure of the danger posed by a patient would disrupt the patient's relationship with the therapist, thereby impairing the therapist's ability to continue treating the patient. This disruption, however, is an incidental effect of a course of action taken by the therapist extraneous to the treatment of the patient.

**5.** Cooper did not report the alleged sexual abuse to the police. Flanders's daughter made the report. Flanders was subsequently arrested and charged with gross sexual misconduct. A jury acquitted him, and he then initiated this action.

adults or to law enforcement authorities. That report of sexual abuse could expose the health care professional to retaliatory lawsuits by the alleged abuser if we held that the health care professional owed a duty of care to that party. Such exposure to a negligence action would be a powerful disincentive to the detection and treatment of sexual abuse.

[¶ 11] In *Bird v. W.C.W.*, 868 S.W.2d 767, 768 (Tex.1994), the Texas Supreme Court refused to permit a father to sue a psychologist for the negligent misdiagnosis of sexual abuse in the treatment of his child. Although the court acknowledged "that the harm to a parent accused of sexual abuse is foreseeable," it concluded that foreseeability alone did not provide a basis for imposing a duty:

> A claimant's right to sue a mental health professional must be considered in light of countervailing concerns, including the social utility of eradicating sexual abuse. Evaluating children to determine whether sexual abuse has occurred is essential to that goal. Young children's difficulty in communicating sexual abuse heightens the need for experienced mental health professionals to evaluate the child. Because they are dealing with such a sensitive situation, mental health professionals should be allowed to exercise their professional judgment in diagnosing sexual abuse of a child without the judicial imposition of a countervailing duty to third parties.

*Id.* at 769 (citations omitted). We agree with this analysis. The recognition of the duty urged by Flanders would be contrary to the legislative concern for the detection and reporting of sexual abuse reflected in Maine's mandated reporter statute.

## IV.

[¶ 12] The Legislature has also demonstrated a concern for the effect of malpractice liability on health care professionals and has acted to limit that liability. Pursuant to the Maine Health Security Act, 24 M.R.S.A. §§ 2501–2961 (1990 & Supp.1997), a party cannot pursue an action for professional negligence in court unless the party has first presented the claim to a prelitigation screening panel. 24 M.R.S.A. § 2903 (1990 & Supp.1997). The purpose of this requirement is both "[t]o identify claims of professional negligence which merit compensation ... and ... to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S.A. § 2851(1) (1990).[6]

[¶ 13] The Legislature's decision to circumscribe the malpractice liability of health care professionals underscores the appropriateness of reserving for legislative consideration the expansion of their malpractice liability to third parties sought by Flanders. Although we have the power as a common law court to recognize the duty urged by Flanders, there are times when "judicial decree is no substitute for the exhaustive gathering of socioeconomic facts and the public debate upon the import of those facts that would occur before the Maine Legislature enacted so sweeping an embellishment on the existing tort law of this state." *Durepo v. Fishman*, 533 A.2d 264, 265 (Me.1987). That caution is particularly appropriate when the Legislature has already enacted measures which are inconsistent with the expansion of tort liability sought by an injured party. In our view, the Legislature is the more appropriate forum for gathering and considering the factual material needed to fashion a policy that might balance the needs of victims of sexual abuse and the needs of those individuals who claim they were wrongly accused of sexual abuse because of the negligence of a health care professional.

[¶ 14] We conclude, therefore, that Cooper and Greater Brunswick Physical Therapy did not owe Flanders a duty of care. His negligence claim against them is not actionable.

The entry is:

Judgment affirmed.

---

**6.** If the prelitigation screening panel unanimously finds either that the practitioner did not deviate from the applicable standard of care or that the practitioner's deviation did not proximately cause the injury, but the claimant nevertheless chooses to proceed in court, the panel's unanimous findings are admissible against the claimant. 24 M.R.S.A. §§ 2855, 2857, 2858 (1990 & Supp.1997).