STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-565

CHARLES MORGANSTERN,

Plaintiff

v.

MERCY HOSPITAL, JENNIFER
LAMB, and MARILYN SCHIAVONI

Defendants

ORDER ON
MOTION TO DISMISS

Before the Court is Defendants Mercy Hospital, Jennifer Lamb and Marilyn

Schiavoni's ("Defendants") motion to dismiss Plaintiff Charles Morganstern's

("Plaintiff") complaint, as well as Defendants' motion to seal.[1]

**BACKGROUND**

The facts as alleged by Plaintiff can be summarized briefly as follows. Plaintiff's

sister, Jacqualyn Morganstern, was a patient at Mercy Hospital from December 1, 2005

through her death in February, 2006. During this time, Plaintiff regularly visited Ms.

Morganstern. At no time relevant to this case was Plaintiff a patient of Mercy Hospital or

of any of the hospital staff named in this action.

On January 31, 2006, staff at Mercy Hospital questioned Plaintiff regarding their

belief that he had engaged in inappropriate physical contact with his sister of a sexual

---

[1] Defendants' motions to dismiss and to seal are both predicated on the applicability of the Maine Health
Security Act to Plaintiff's complaint. As such, the analysis of Defendants' motion to dismiss, discussed at
length in the body of this opinion, is equally applicable to Defendants' motion to seal.

1

nature. The next day, following a visit with his sister, Plaintiff was confronted by Mercy Hospital staff regarding the alleged inappropriate sexual contact with his sister. This time, Portland Police Officers accompanied the staff. After being detained for a period of time, Plaintiff was given a criminal trespass notice prohibiting him from visiting his sister and preventing him from claiming his sister's body upon her death.

Plaintiff subsequently initiated the present lawsuit, alleging defamation and defamation per se by Defendants, premised on the allegations against Plaintiff. These allegations were allegedly made to the Portland Police Department, the Maine Department of Health and Human Services and between staff members of Mercy Hospital. Plaintiff intends to prove that Defendants made these allegations either with knowledge that they were untrue or with reckless disregard for their truth.

## DISCUSSION

The outcome of Defendants' motion to dismiss turns on whether Plaintiff's cause of action is subject to the procedural requirements of the Maine Health Security Act ("MHSA") contained in 24 M.R.S.A. § 2903(1). Plaintiff concededly has not complied with the MHSA's requirements for bringing a cause of action in the Superior Court. As a result, if his case is subject to the MHSA, it must be dismissed.

The MHSA states that "[n]o action for professional negligence may be commenced until the plaintiff has [filed a written notice of claim under oath, participated in the screening panel process, and complied with the MHSA's statute of limitations]." 24 M.R.S.A. § 2903(1)(A)-(C). The statute defines an "action for professional negligence as "any action for damages for injury or death against any health care provider, its agents

2

or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S.A. § 2502(6).

Although Defendants admit that Plaintiff's defamation claims are not the kind of action typically subject to the MHSA's requirements, they nonetheless argue that the MHSA is applicable here, citing language from a Law Court decision stating that "[t]he broad statutory definition, including the term 'or otherwise,' reveals the legislature's intention that the MHSA fully occupy the field of claims brought against health care providers." *Dutil v. Burns*, 674 A.2d 910, 911 (citing *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994)).

One example of a case applying the general rule recognized in *Dutil*, is *Saunders v. Tisher*, 2006 ME 94, 902 A.2d 830. That case involved a patient's suit against his former psychiatrist based on the doctor's actions in having the patient involuntarily admitted to a mental hospital. *Id.* ¶ 10, 902 A.2d at 833. In that case, the patient brought suit for violations of the Maine Civil Rights Act, intentional infliction of emotional distress, and negligent infliction of emotional distress, *Id.* ¶ 5, 902 A.2d at 832, and argued that these claims were not subject to the procedural requirements of the MHSA, *Id.* ¶ 8, 902 A.2d at 832.

In analyzing whether the MHSA applied in *Saunders*, the court recognized that "the intent of the Legislature in enacting the MHSA was to stem the tide of rising malpractice costs, and thereby the cost of health care in general. To do so, the Legislature essentially made the MHSA applicable to any case that could implicate medical

malpractice insurance." *Id.* ¶ 15, 902 A.2d at 834. Thus, "[a]lthough [the patient] styles his complaint as one for a violation of his civil rights, because the actions of [the doctor] described in [the] complaint regard health care services, and implicate medical malpractice insurance, the complaint falls within and is subject to the provisions of the MHSA." *Id.* ¶ 15, 902 A.2d at 834-35.

Although Defendant argues that *Saunders* stands for the proposition that "non-traditional claims against health care providers" are subject to the requirements of the MHSA, that case demonstrates the inapplicability of the act to the present case. *Saunders* involved a suit by a patient against his doctor for actions arising out of the provision of health care services. Defendant cites no cases in which the MHSA has been applied to suits brought by third parties against health care providers for damages caused to that third party, as opposed to a patient.[2] Nor has Defendant argued how a hospital's medical malpractice insurance could be implicated by a defamation lawsuit. *See id.* Quite simply, defamation of a third party by hospital employees is not medical malpractice subject to the MHSA merely by virtue of that defamation occurring inside a hospital. *See id.*

This conclusion is unaltered by Defendant's argument that reporting suspected abuse of patients is statutorily required of nurses and other hospital employees under the Adult Protective Services Act ("APSA"). 22 M.R.S.A. § 3477. As an initial matter, while that duty applies to a wide range of medical professionals, it equally applies to

---

[2] In fact, in a case where a father sought to bring a cause of action for his own damages against a physical therapist that "employed 'bizarre and inappropriate' treatment modalities, and implanted in the mind of [his] daughter false memories of sexual abuse perpetrated by [the father]," the Law Court refused to permit a negligence claim under the MHSA. *Flanders v. Cooper*, 1998 ME 28, ¶¶ 2 & 3, 706 A.2d 589, 589-90. In that case, the court recognized that a suit for professional negligence under the MHSA could not lie because the therapist owed the father no duty of care. *Id.* ¶ 14, 706 A.2d at 592.

4

professionals outside of the medical field who are similarly in a position to recognize abuse, including social workers, law enforcement officials, humane agents employed by the Department of Agriculture, Food and Rural Resources and clergy members. 22 M.R.S.A. § 3477(10), (17), (22) & (23). Further, this statutory duty was in relation to Defendants' care of Ms. Morganstern. Nothing in the APSA created a relationship between Defendants and Plaintiff such the alleged actions of the Defendants could constitute medical malpractice.[3]

The entry is:

      Defendants' motion to dismiss is DENIED. Defendants' motion to seal is DENIED.

      The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 27th day of March, 2007.

Robert E. Crowley
Justice, Superior Court

---

[3] It is notable that the APSA contains its own safeguards to protect those who are subject to its reporting requirement. Specifically, the APSA states that a party who reports abuse in "good faith . . . is immune from any civil liability that might otherwise result from these actions." 22 M.R.S.A. § 3479-A(1). Good faith is presumed in any proceeding regarding immunity under the APSA. 22 M.R.S.A. § 3479-A(2).

CCURTS
ıd County
ıx 287
ɔ 04112-0287

STEVEN LECHNER ESQ
4 SOUTH ST
FREEPORT ME 04032

COURTS
County
287
04112-0287

DANIEL RAPAPORT ESQ
HOLLY RUSSELL ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss CIVIL ACTION
DOCKET NO. CV-06-565
REC- CUM- 11/5/2007

2007 NOV -5 P 4: 10

CHARLES MORGANSTERN,
                    Plaintiff

                                        ORDER ON
v.                                      DEFENDANT'S MOTION
                                        FOR SUMMARY JUDGMENT
MERCY HOSPITAL,
                    Defendant           DONALD L. GARBRECHT
                                                LAW LIBRARY

                                                FEB 06 2008

Before the Court is Defendant Mercy Hospital's Motion for Summary

Judgment pursuant to Maine Rule of Civil Procedure 56 on all counts of Plaintiff

Charles Morganstern's Complaint.

## BACKGROUND

The Plaintiff Charles Morganstern ("Morganstern") filed a Complaint on

October 11, 2006 with this Court alleging that the Defendant Mercy Hospital (the

"Hospital"), a Maine non-profit corporation, defamed him.[1]  Morganstern's sister

Jacqualyn Morganstern ("Jacqualyn") was a patient at the Hospital from

December 2005 to the date of her death in February 2006.  Jacqualyn was

admitted for an eating disorder and both parties agree that by the end of her

hospital stay, Jacqualyn was incapacitated and non-verbal.

Morganstern and Jacqualyn were each other's only living close relatives

and had lived together for more than twenty years prior to Jacqualyn's death.

While his sister was in the Hospital, Morganstern would visit frequently, usually

once in the morning and again in the evening.  It is undisputed that the Hospital

---

[1] Specifically, Morganstern alleges defamation per se and defamation against the
Hospital.

nursing staff found Morganstern to be impatient and demanding when he visited.

At least five nurses at the Hospital stated that they observed physical conduct by Morganstern toward Jacqualyn that they believed was inappropriate in nature. This alleged inappropriate conduct included Morganstern kissing his sister on the lips, lying in bed with his sister while holding her closely, leaning on his sister, and having his hand under the sheets in the area of his sister's pelvis. One of the nurses, Marilyn Schiavoni ("Schiavoni"), reported what she had seen to the Charge Nurse, who then contacted Hospital security, the Portland Police Department and the Department of Health and Human Services ("DHHS"). Both Nurse Schiavoni and fellow nurse Jennifer Lamb ("Lamb") gave statements to the police regarding what they had seen. The Portland Police Department then issued a criminal trespass notice to Morganstern, barring him from entering Hospital property. In total, the nurses' statements were made to each other, to a licensed social worker, to the police, to Hospital security and to the DHHS. Morganstern denies that he ever engaged in any inappropriate conduct with his sister, including kissing or touching her in her pelvic area.

Morganstern admits that he has not suffered any economic loss as a result of the statements made by Hospital staff about him. He further stated in a deposition that he has not seen any doctor or psychiatrist or psychologist for any mental or emotional problems since the time of his sister's death. In response to deposition questions about any harm to his reputation as a result of the statements made by Hospital staff, Morganstern stated that "There could have been harm to [his] reputation," but that there has not been yet ("Not at this time, no").

2

The Hospital filed this Motion for Summary Judgment on all counts of Morganstern's Complaint on September 24, 2007.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

In response to a defendant's motion for a summary judgment, a plaintiff having the burden of proof at trial must produce evidence that, if produced at trial, would be sufficient to resist a motion for judgment as a matter of law. *Northeast Coating Technologies, Inc. v. Vacuum Metallurgical Co., Ltd.*, 684 A.2d 1322, 1324 (Me. 1996). This requires the plaintiff to establish a prima facie case for each element of the cause of action. *Id.*

3

## DISCUSSION

### I.    Existence and Abuse of a Conditional Privilege

The Hospital makes two arguments in support of its Motion for Summary Judgment. First, the Hospital argues that any statements made by the Hospital concerning Morganstern are covered by the common law privilege against liability for defamation in situations where society has an important interest in promoting the speech at issue. Second, the Hospital argues that it is immune from liability on the basis of 22 M.R.S.A. § 3479-A(1), which shields health care professionals from liability for reporting suspected incidents of abuse of incapacitated adults.

The elements of defamation are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special ham or the existence of special harm caused by the publication. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193. Thus, a claim of defamation "requires that the publication be unprivileged." *Id.*

A defendant who publishes a defamatory statement is not liable for such publication if (1) "the matter is published upon an occasion that makes it conditionally privileged" and (2) "the privilege is not abused." Restatement (Second) of Torts § 593 (1977); *Rice v. Alley*, 2002 ME 43, ¶ 21, 791 A.2d 932, 936. A conditional privilege against defamation liability "arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). Whether or not a defendant is entitled to the common law privilege is a question of law. *Cole*, 2000 ME 104, ¶ 6,

4

752 A.2d at 1193. Thus, "it is for the court to determine whether the occasion upon which the defendant published defamatory matter gives rise to a conditional privilege." *Saunders v. VanPelt*, 497 A.2d 1121, 1125 (Me. 1985). The defendant has the burden of proving the existence of a conditional privilege. *Id.*

Once the existence of a conditional privilege has been established, liability for defamation exists only if the person who made the publication abused the privilege. *Selander v. Rossignol*, 1998 ME 216, ¶ 7, 717 A.2d 380, 381. The determination of abuse of the privilege is a question of fact. *Rice*, 2002 ME 43, ¶ 21, 791 A.2d at 936. The burden of showing abuse lies with the plaintiff. *Saunders*, 497 A.2d at 1125. Abuse of a privilege can include making the statement "outside normal channels," *Rice*, 2002 ME 43, ¶ 23, 791 A.2d at 936; making the statement "with malicious intent," meaning the privilege holder knows his statement is false or recklessly disregards its truth or validity or acts with spite or ill will, *Id.*; or possibly by "unnecessary or unreasonable publication beyond the scope of the privileged circumstances," *Vashling Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). A finding of reckless disregard for the truth can be made if evidence establishes that the maker of the statement had "'a high degree of awareness of probable falsity or serious doubt as to the truth of the statement.'" *Rippett v. Bemis*, 672 A.2d at 87, quoting *Onat v. Penobscot Bay Medical Center*, 574 A.2d 872, 874 (Me. 1990). "An inadequate investigation of the truth of the statement by the publisher is not sufficient to show [abuse]." *Rice*, 2002 ME 43, ¶ 23, 791 A.2d at 937.

Pursuant to 22 M.R.S.A. § 3477, certain persons are required to report when they have "reasonable cause to suspect that an incapacitated or dependent adult has been or is at substantial risk of abuse, neglect or exploitation."

5

Registered and licensed practical nurses are included in the list of persons required to make such reports. 22 M.R.S.A. § 3477(1)(A)(8). A person who in good faith reports pursuant to this statute is immune from liability, including civil liability. 22 M.R.S.A. § 3479-A(1). There is a rebuttable presumption of good faith in proceedings regarding immunity from liability. 22 M.R.S.A. § 3479(2).

For purposes of this Summary Judgment Motion only, Morganstern "accepts" that the statements at issue are conditionally privileged either under the common law privilege (the Hospital's first argument) or under the statutory privilege (the Hospital's second argument). Plaintiff's Objection to Defendant's Motion for Summary Judgment, page 2. Thus, the only question remaining before this Court is whether or not there is a genuine issue of material fact regarding whether or not the Hospital abused these privileges or made the publications in bad faith. The burden of proving such abuse lies with Morganstern. *See Saunders*, 497 A.2d at 1125 ("To recover, the plaintiff must then show the loss of the conditional privilege through its abuse").

Morganstern makes several arguments in an attempt to meet his burden of proving that the Hospital abused its privilege. First, Morganstern argues that the statement of Nurse Lamb that he inappropriately touched his sister under the bed sheets is false and that Nurse Lamb admits that she did not actually see Morganstern touch his sister, but rather only saw Morganstern's hand moving under the sheets in the general area of his sister's pelvis. After Nurse Lamb made this observation, she spoke with the Portland Police Department. Morganstern then received a criminal trespass notice barring him from Hospital property. Morganstern contends that "Nurse's Lamb's false statement alone,

6

particularly given its pivotal role in the adverse consequences to Mr. Morganstern (the criminal trespass notice issued to him on February 1, 2006, [sic] when viewed in the light most favorable to the Plaintiff, defeats the summary judgment motion." Plaintiff's Objection to Defendant's Motion for Summary Judgment, page 5.

Second, Morganstern argues that the Hospital did not conduct a reasonable internal investigation of the claims made about alleged improper conduct with his sister. Specifically, Morganstern objects to the actions of Cathy McDonald ("McDonald"), the social worker who confronted Morganstern about his conduct toward his sister the day before the police and DHHS were contacted. Morganstern maintains that McDonald "accepted allegations [by an unspecified nurse or nurses] as true and accurate, not as merely allegations which needed to be investigated..." Plaintiff's Objection to Defendant's Motion for Summary Judgment, page 6. Thus, Morganstern concludes, "[t]his minimal 'investigation' constitutes a separate ground on which a jury could conclude that any conditional privilege was abused, and, hence, lost...[as] Mercy Hospital's failure to conduct a reasonable investigation is akin to reckless disregard for the truth or falsity of the assertions made against Mr. Morganstern." *Id.*, page 7.

Morganstern further argues that there is evidence of animus towards him by the Hospital nursing staff. It is undisputed that the Hospital staff found Morganstern demanding and impatient. In a deposition, Nurse Lamb stated that she thought Morganstern to be "weird" and had a "gut feeling" that something was wrong with the way Morganstern behaved toward his sister. According to Morganstern, this "animus" raises the question of whether the Hospital acted with malice toward him, thus abusing its privilege.

7

Finally, Morganstern argues that the reports made by the Hospital staff extended beyond what was necessary under the circumstances to communicate a concern that inappropriate conduct may have occurred. Morganstern particularly emphasizes that McDonald reported actual abuse to DHHS in her first report rather than suspected abuse and that Nurse Lamb's initial report did not state that she did not actually see Morganstern in actual physical contact with his sister under the bed sheets. Morganstern contends that these false, incomplete and inaccurate reports constitute an abuse of a conditional privilege.

The Court rejects Morganstern's arguments and finds no abuse of a conditional privilege by the Hospital for the reasons set forth below. As to Morganstern's first argument, that Nurse Lamb's false statement concerning her observations is sufficient to show abuse of a conditional privilege, Morganstern appears to misinterpret what Nurse Lamb actually said. Morganstern states that Nurse Lamb falsely stated that she saw Morganstern "inappropriately touch[] his sister under the bed covers." Plaintiff's Objection to Defendant's Motion for Summary Judgment, page 4. In fact, however, Nurse Lamb's statement, as set forth in the police report, was "Because [Morganstern] reached under the covers, I wasn't able to see where he was touching Jacqualyn, but it appeared to be on her left thigh area." Nurse Lamb was questioned about this statement at her deposition by Morganstern's attorney, Mr. Lechner:

> Q.  ...Did you report to [the police] that you personally observed Mr. Morganstern having inappropriate physical contact with his sister?
>
> A.  Yes.
>
> Q.  That you observed it?
>
> A.  Yes.

Q. Okay. And what – what was the substance of what you told the detective? What – what did – what did you report seeing?

A. His hands under her sheets.

Lamb Deposition 83:4 – 83:14. Contrary to Morganstern's interpretation of her statement, Nurse Lamb said that "she wasn't able to see where" Morganstern touched Jacqualyn, only that she saw his hand under her sheets.

Moreover, even if the Court were to assume that Nurse Lamb did make a false statement, the standard for proving abuse of a conditional privilege is not whether the statement was false or not, but rather whether the person making the statement did so *knowing* that it was false or in *reckless disregard* of the statement's truth or falsity. The burden of showing this mens rea lies with Morganstern; thus, Morganstern must show that Nurse Lamb made her statement with a high degree of awareness of its falsity or with serious doubt as to its truth. *See Rippett*, 672 A.2d at 87. Morganstern has not met this burden. To the contrary, because Nurse Lamb was aware of potential inappropriate conduct concerning Morganstern that had been reported in Jacqualyn's medical record by other nurses and because of her own assessment of Morganstern's behavior, it is almost certain that she had no doubt about the truth of her statement.

Morganstern's second argument is that the Hospital failed to conduct a reasonable investigation of the claims made against him in reckless disregard of the validity of those claims. This argument is unavailing, however, as the Law Court has specifically held that an inadequate investigation of a statement alone is not sufficient to show abuse of a conditional privilege. *See Rice*, 2002 ME 43, ¶ 23, 791 A.2d at 937; *Cole*, 2000 ME 104, ¶ 8, 752 A.2d at 1194. Moreover, even if a more thorough investigation had occurred, there is no evidence that it would

9

have rebutted any of the claims made by the Hospital staff, including the several nurses who reported inappropriate conduct by Morganstern toward his sister. Indeed, no fewer than five nurses, including Lamb, Schiavoni, Abbie Howell ("Howell"), Lisa Burrage ("Burrage") and Karyn Strout ("Strout"), noted instances of inappropriate conduct by Morganstern in Jacqualyn's medical record or to their supervisors, and each has affirmed their statements either in depositions or affidavits. Thus, the instant case is distinguishable from *Rippett v. Bemis*, a case in which the Law Court reversed the trial court's entry of summary judgment in favor of the defendant-police officers who had only "conducted a cursory investigation interviewing none of the parties involved" before announcing that the plaintiff had made false accusations about the police officers. *Rippett v. Bemis*, 672 A.2d 82, 85 (Me. 1996).

In his third argument, Morganstern maintains that the "animus" of the Hospital staff towards him raises the question of whether the Hospital acted with malice toward him. This Court finds no evidence of such malice. The Hospital admits that some of its nurses, including Nurse Lamb, found Morganstern demanding and difficult. Some of these same nurses also admitted to finding Morganstern "weird," particularly with respect to his conduct toward his sister. However, these admitted feelings do not rise to the level of animus nor do they rise to the level of malice sufficient to show abuse of a conditional privilege. The Court reiterates that a finding of malice requires that the statements were made by persons who knew their statements to be false or who recklessly disregarded their truth or that the statements were made out of ill will or spite. *See Staples v. Bangor Hydro-Electric Co.*, 629 A.2d 601, 604 (Me. 1993). Morganstern has failed to meet his burden of showing such mental state, ill will or spite here. At least

10

three nurses recorded in Jacqualyn's medical record (and later affirmed in affidavits) that they had individually witnessed instances of inappropriate conduct by Morganstern on separate occasions. Once this pattern was established, the nursing staff informed McDonald, the social worker, and ultimately the DHHS (as it was required to do pursuant to 22 M.R.S.A. § 3477) and the Portland Police Department.

Finally, this Court also rejects Morganstern's argument that the Hospital abused its conditional privilege by conveying reports and statements by the Hospital staff beyond what was necessary under the circumstances. The statements at issue here were made among the Hospital nursing staff; to McDonald, a social worker; to Hospital security; to DHHS; and to the Portland Police Department. None of these persons or organizations were unnecessary or beyond the reasonable scope considering what was contained in the statements (namely, suspected sexual abuse of an incapacitated adult). Morganstern does not allege, nor is there any evidence to support, that any statements were made to the press or to any private individuals or groups who did not have an interest in ensuring Jacqualyn's safety and well-being. Nor did the Hospital act unreasonably or hastily under the circumstances. Several nurses had observed inappropriate conduct by Morganstern over the course of at least several days and documented the same on Jacqualyn's medical record. The Hospital staff then contacted security and the Portland Police Department to report this conduct. As nurses and social workers are required to do under 22 M.R.S.A. § 3466, the Hospital reported the suspected abuse to DHHS. The statute requires that reports "must contain the name and address of the involved adult" and

11

"information regarding the nature and extent of the abuse." 22 M.R.S.A. § 3477(2).

For the reasons contained herein, the Court finds no abuse of its conditional privilege by the Hospital. As such, the Hospital cannot be liable for defamation and its Motion for Summary Judgment is granted.

## II.  Morganstern's Discovery Arguments

In addition to arguing that the Hospital abused its conditional privilege, Morganstern also maintains that the Hospital's Motion for Summary Judgment must be denied because he is still seeking discovery materials from the Hospital, including deposing Nurses Howell, Burrage and Strout, each of whom recorded inappropriate conduct by Morganstern in Jacqualyn's medical record and affirmed the same in affidavits filed with the Hospital's Motion for Summary Judgment. According to Morganstern, as these three witnesses have not been subject to cross-examination, they cannot be used to substantiate the Hospital's claims that Morganstern acted inappropriately toward his sister. Plaintiff's Objection to Defendant's Motion for Summary Judgment, page 6 ("...the Defendant has provided no witness who claims to have seen all three examples of inappropriate physical contact. Rather, Defendant has produced affidavits by three nurses who have not been subjected to cross-examination...").

Morganstern initiated this action on October 11, 2006. In its Trial Management Conference Order dated September 21, 2007, this Court (Crowley, J.) set October 27, 2007 as the deadline for discovery in this case. On September 24, 2007, the Hospital filed its Motion for Summary Judgment and Statement of Material Facts. Thus, Morganstern had over a year since this case began to conduct discovery. He also had over a month between the date the Hospital

12

filed its Motion and the discovery deadline to conduct discovery or to raise issues of discovery disputes to this Court. Morganstern failed to do so. Nor did Morganstern file an affidavit pursuant to M.R. Civ. P. 56(f) to request additional time for discovery. Accordingly, this Court will not defer action on or refrain from granting the Hospital's Motion for Summary Judgment on this basis.

Therefore, the entry is:

Defendant Mercy Hospital's Motion for Summary Judgment on all counts of Plaintiff Charles Morganstern's Complaint is GRANTED. Judgment for the Defendant.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _5th_ day of _November_, 2007.

_____
Robert E. Crowley
Justice, Superior Court

13

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

**First Class Mail**



DANIEL RAPAPORT ESQ
HOLLY RUSSELL ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

**First Class Mail**

First Class Mail

STEVEN E B LECHNER ESQ
4 SOUTH ST
FREEPORT ME 04032