STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-04-248
                                                        TED - CUM- 1/2/200?

NANCY JORDAN, et al.,

      Plaintiffs,

     v.                                        **ORDER ON MOTION FOR**
                                                        **SUMMARY JUDGMENT**

CAP QUALITY CARE INC., et al.,

      Defendants.


## I.     BACKGROUND

Defendant Mallinckrodt Inc. (Mallinckrodt) is a manufacturer of methadone and sells its product to Cap Quality Care Inc., (CAP) a methadone clinic in Westbrook, Maine. CAP sells and dispenses methadone, a synthetic opiod, to individuals on methadone maintenance for opiate addiction.

This case arises out of the death of Seth Jordan (Jordan) on April 14, 2002. He was found dead in his apartment in Portland on that date. A medical examiner determined that he died of methadone poisoning.

The plaintiffs are Seth Jordan's parents, Nancy and Robert Jordan, and Robert Jordan as the Personal Representative of Seth Jordan's estate. The initial complaint was filed April 13, 2004. An amended complaint was filed in November 2004 that alleges twelve claims against Mallinckrodt for Seth Jordan's death.[1] At the time in question, Mallinckrodt was the sole provider of methadone to CAP.

---

[1] CAP and three CAP employees, Stephen Croteau, Dr. Steven Keefe, and Dr. Marc Shinderman, are also named as defendants in the amended complaint, which alleges separate counts against them that are not pertinent to this motion.

The counts alleged against Mallinckrodt include negligent design defect (Count III); negligent failure to warn (Count V); negligent infliction of emotional distress (Count VII); strict liability

Jordan obtained methadone manufactured by Mallinckrodt from a friend (Patient 1) who had been receiving methadone treatment from CAP for approximately two months prior to the incident. On the Saturday night of Jordan's death, Patient 1 shared his take-home dose of methadone with Jordan. Since CAP was closed on Sunday, CAP personnel had provided Patient 1 with a take-home dose to self-administer the following Sunday.[2]

Each sale of methadone from Mallinckrodt to CAP includes an FDA-approved product insert containing warnings and instructions for use. CAP maintains that licensed pharmacists prepare the take-home bottles and each bottle is labeled with the patient's name, address, and daily dose. The label also states that "[f]ederal law prohibits the transfer of this drug to any person other than the patient for whom it is prescribed."

It is not disputed that CAP provides patients with methadone safety information and warnings during the initial orientation, as well as in consent forms, and during counseling sessions with patients. However, the parties have provided contradictory facts as to the extent and efficacy of CAP's orientation and the information sharing with patients that actually occurs. In addition, it is agreed that Mallinckrodt sold methadone to CAP in tablet form, liquid form, and dispersible tablet form, but the parties dispute the form of the particular take-home dose provided to Patient 1 on the date in question. This disputed fact is not relevant to the present motion.

---

design defect (Count VIII); strict liability failure to warn (Count X); breach of implied warranty of merchantability (Count XII); breach of implied warranty of fitness of particular purpose (Count XIII); wrongful death (Count XVI); punitive damages (Count XVII); vicarious liability (Count XVIII); concert of action liability (Count XIX); and joint enterprise and/or joint venture (Count XX).

[2] At all relevant times, federal and state law permitted methadone maintenance treatment facilities to provide patients with a single take-home dose of methadone for a day that the clinic is closed for business, including Sunday and holidays. 42 C.F.R. § 8.12(i).

2

While the parties also disagree on whether Patient 1 ever read a product label, it is clear that he disregarded the warnings when he provided Jordan with his methadone. Following Jordan's death, on October 10, 2002, Patient 1 was indicted on charges of manslaughter and furnishing a scheduled drug in connection with Jordan's death. On January 15, 2004 pursuant to a plea bargain, Patient 1 was convicted of furnishing a scheduled drug to Jordan and sentenced to prison.

## II.     BEFORE THE COURT

Defendant Mallinckrodt has filed a motion for summary judgment on all claims against it, but only provides argument on the negligence (Counts III, V, and VII), strict liability (Count X), design defect (Counts III and VIII), and failure to warn claims (Counts III and X), because the other causes of action against it are merely derivative of the product allegations.

The Jordans argue that Mallinckrodt has ignored the other substantive claims for breach of implied warranty of merchantability; breach of implied warranty of fitness of particular purpose; wrongful death; and emotional distress. However, if the negligent and strict liability design defect and failure to warn claims are dismissed, then the Jordans have no basis to pursue the other claims. All of the other cause of actions against Mallinckrodt require a showing that the methadone is defective or unreasonably dangerous.[3]

---

[3] In order to succeed on the other claims, the plaintiff must prove that Mallinckrodt committed some wrongful act or omission. Given the circumstances of the case and the evidence presented, the only wrongful act or omission that a fact finder could reasonably find against Mallinckrodt would require finding Mallinckrodt disseminated a defective or unreasonably dangerous product without adequate warning.

3

## III.    DISCUSSION

### A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77 ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90 ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84 ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158 ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a *prima facie* case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29 ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed, "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24 ¶ 6, 816 A.2d 63, 65.

### B. Design Defect Claims

Mallinckrodt argues that it sold methadone to CAP in both liquid and tablet form and the methadone taken by Jordan prior to his death consisted of one 40-milligram methadone tablet. Mallinckrodt asserts that there is no evidence that Jordan drank or injected a liquid form of methadone. Thus, all allegations concerning liquid methadone are irrelevant to the lawsuit.

The Jordans argue that the 40-milligram tablets given to Jordan were dispersible, meaning they were dissolved in liquid prior to distribution. The affidavit testimony provided by Patient 1 in 2006 and then in 2008 is, thus, contradictory. In his 2006 affidavit, Patient 1 states that he gave Jordan one 40-milligram methadone tablet.

4

However, in his 2008 affidavit, Patient 1 states that the take-home dose he shared with Jordan was 260 milligrams in liquid form.[4] Patient 1's girlfriend at the time in question also provided affidavit testimony in 2008 stating that Patient 1's take-home dose was in liquid form. CAP's take-home dose policy requires that "take-home methadone is liquefied and sealed in a tamper-resistant medication bottle."

Although the Jordans have presented a genuine factual dispute as to what form the methadone was in when Jordan ingested it, it is not a factual dispute that is material to the case. If methadone in liquid form is not defective, then whether the methadone in question was in tablet or liquid form is not material. In order to withstand summary judgment on the defective design claims, the Jordans must provide *prima facie* evidence that methadone in its liquid form is indeed defective or unreasonably dangerous.

## C. Design Defect

In actions based on strict liability, whether the alleged defect is a failure to warn or defective design, no liability will be imposed unless the product is defective. *Bernier v. Raymark Industries Inc.*, 516 A.2d 534, 537 (Me. 1986). In product design defect actions, "negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm." *Stanley v. Schiavi Mobile Homes Inc.*, 462 A.2d 1144, 1148 (Me. 1983).

In order to prevent a summary judgment, the Jordans must present evidence that liquid methadone is defective and unreasonably dangerous, and that the defect caused the harm to Jordan. *See Guiggey v. Bombardier*, 615 A.2d 1169, 1172 (Me. 1992). In assessing design defect claims, Maine courts apply the danger/utility test, which

---

[4] In his 2008 affidavit, Patient 1 states that he believed that Jordan only drank about 40 milligrams of the 260-milligram dose based on the toxicology results after Jordan's death, but that he really didn't know how much of the dose Jordan drank.

5

requires the fact finder to weigh the utility of the product against the danger it presents. *Id.*

Mallinckrodt argues that the Jordans have not provided evidence supporting their argument that selling methadone in liquid form constitutes a design defect. The expert affidavit testimony submitted by the Jordans does not discuss whether methadone in its liquid form is defective. The Jordans contend that expert opinion is not required for this claim to be actionable because it does not take special knowledge or skill to understand the obvious design defect alleged.[5] With respect to medical negligence cases, the Law Court has recognized that "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge," expert medical testimony is unnecessary. *Forbes*, 552 A.2d at 17 (quoting *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954).

Beyond the Jordans' conclusive assertion that it is easier to overdose on methadone in its liquid form because it is difficult to gauge the amount being ingested, they have not explained what makes the defective nature of the liquid methadone sufficiently obvious. Whether or not liquid form methadone is defective is not obvious or necessarily based in common knowledge. Federal treatment standards set forth by the Department of Health and Human Services do not prohibit the unsupervised administration of methadone in its liquid form. *See* 42 C.F.R. § 8.12 (2008). CAP's policy statement on take-home doses of methadone provides that, "[l]iquefying the medication discourages diversion, promoting a positive community perception of our clients and clinic." Based on the submitted evidence, common knowledge appears to be

---

[5] The Maine Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." M.R.Evid. 702.

6

divided as to whether liquid methadone or tablet methadone is preferable. Thus, it is not sufficiently obvious that liquid methadone is defective. The Jordans have failed to present a *prima facia* case for the assertion of their claim that liquid form methadone is defective and unreasonably dangerous.

## D. Failure to Warn

### 1. Mallinckrodt's Duty to Jordan

Even if methadone in its liquid form is not defective, it is a product that requires suppliers to warn expected users of the drug's inherent dangers and risks. Regardless of whether a failure to warn claim in phrased in terms of negligence or strict liability, the analysis is basically the same. *See Pottle v. Up-Right Inc.*, 628 A.2d 672, 675 (Me. 1993). The general rule is that "the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier had reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user." *Id.* A product liability action for failure to warn requires a three-part analysis: (1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury. *Id.* Mallinckrodt argues that the Jordans have not provided a *prima facie* case for failure to warn because the failed to establish the three required elements.

Mallinckrodt asserts that it did not owe a duty to Jordan because it is impossible for prescription drug manufacturers to warn all unintended and illegal users, and because it runs contrary to public policy to hold drug manufacturers liable for not providing a warning to illegal users. According to Mallinckrodt, Maine public policy bars claims resulting from illegal conduct, and the possession of methadone without a prescription is a crime under both state law and federal law.

7

The Jordans argue Mallinckrodt owes a duty to warn all expected users of the drug and that his illegal use of the drug does not eliminate that duty. They point out that Jordan's initial possession of methadone before ingesting the drug was only a non-violent misdemeanor offense.[6] Further, they assert that the illegal act of possessing methadone did not cause Jordan's death. Rather Mallinckrodt's failure to warn Jordan was the reason for his death.

The general rule denying contribution to intentional tortfeasors originated with the English case of *Merryweather v. Nixan*, 8 Term Rep. 186, 1010 Eng. Rep. 1337 (1799). The Law Court later adopted the rule, stating that "the law will not lend its aid to him who founds his cause of action upon an immoral or illegal act. It leaves him where it finds him." *Hobbs v. Hurley*, 117 Me. 449, 451, 104 A. 815, 816 (1918). At the same time, the court embraced an exception to that rule, holding that contribution is allowed when the party is not an intentional and willful wrongdoer. *Id.* at 816. The court has stated that "[t]he purpose of the exception is to avoid the unjust results that might follow from rigid application of the noncontribution rule." *Bedard v. Greene*, 409 A.2d 676, 678 (Me. 1979).

Whether or not Jordan was an intentional and willful wrongdoer when he ingested the methadone is a question of fact. While he did break the law, it was a misdemeanor offense; and, to completely bar his chance of recovery, if Mallinckrodt has committed a more serious wrong, may create an unjust result. Any argument as to the responsibility Jordan had in his death is a question of fact properly dealt with through contributatory negligence.

---

[6] Under Maine law, a person guilty of unlawful possession of a schedule X drug has committed a Class D crime. 17-A M.R.S. § 1107-A(D).

8

Mallinckrodt does not dispute the fact that methadone is foreseeably diverted to non-patients. As a drug manufacturer, particularly a dangerous and addictive drug like methadone, Mallinckrodt owes a duty to all expected users to provide adequate warning to the extent that it is able to do so.

## 2. Adequate Warning

Mallinckrodt also argues that the warning it provided on its product was adequate. There was a printed insert about the product that came with each 100-tablet bottle of 40-millegram dispersible tablets of methadone that Mallinckrodt shipped to CAP. The insert provided information, instructions, and warnings about methadone, including non-medical use by unintended persons. The product insert also contained warnings as required by the FDA concerning the risks associated with the intended and approved uses of methadone.

The Jordans argue that providing only one product insert with each 100-tablet bottle when Mallinckrodt knew that the product would be dispersed in smaller amounts to clinic patients is inadequate. They argue that Mallinckrodt knew of the serious risks associated with the product from foreseeable diversion but took no further steps to warn users. However, Mallinckrodt has submitted evidence that it included product inserts, containing information and warnings, on all bottles it provided to CAP. The extent to which CAP passed-on this information to its patients when it distributed take-home doses pertains to the adequacy of CAP's warnings, and not Mallinckrodt.

## E. Proximate Causation

In order to recover under either a product liability or negligence theory, it is essential that the plaintiff prove that a product's defective design or the defendant's negligent conduct proximately caused the plaintiff's injuries. *Ames v. Dipietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992). Proximate cause requires a showing that "the evidence

9

and inferences that may reasonably be drawn from the evidence indicated that the negligence played a substantial part in bringing about or actually causing injury or damage . . . " *Merriam v. Wanger*, 2000 ME 159 ¶ 8, 757 A.2d 778, 780-81.

The Law Court has defined proximate cause as "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred," *Ames*, 617 A.2d at 561 (quoting *Johnson v. Dubois*, 256 A.2d 733, 734 (Me. 1969)). However, the mere occurrence of an intervening cause does not automatically break the chain of causation stemming from the original actor's conduct. *Ames*, 617 A.2d at 561. In order to break that chain, the intervening cause must also be a superseding cause, that is, neither anticipated nor reasonably foreseeable. *Id.* Whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries "is generally a question of fact, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *Houde v. Millett*, 2001 ME 183 ¶ 11, 787 A.2d 757, 759.

Mallinckrodt asserts that there were several intervening causes of Jordan's death, disrupting the chain of proximate causation. According to Mallinckrodt, Jordan's illegal use of methadone was an intervening and proximate cause of Jordan's death. This argument is weakened by the fact that Mallinckrodt acknowledged that methadone is foreseeably diverted to non-patients. If Jordan's illegal use is reasonably foreseeable, it is not a superceding cause that would break causation. Mallinckrodt also makes the more persuasive argument that CAP's independent knowledge of the risks of methadone breaks the chain of causation in failure to warn claims. Mallinckrodt had no control over whether and how CAP labeled take-home doses that CAP decided to provide to its patients. Mallinckrodt could not reasonably foresee that CAP would fail to provide adequate warning.

10

Although proximate cause is typically a question of fact, the Jordans have not submitted evidence refuting the assertion that CAP's administration of the methadone worked as an intervening cause breaking the chain of causation; that is, CAP's control over the drug before distributing the take-home dose to Patient 1, who then passed it on to Jordan. Because Mallinckrodt did not provide inadequate warning, or proximately cause Jordan's death, Mallinckrodt is entitled to summary judgment.

## IV.   DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

- Defendant Mallinckrodt Inc.'s Motion for Summary Judgment is granted.

- Judgment is entered in favor of Mallinckrodt Inc. on all claims. No costs are awarded.

- This Order terminates the involvement of Mallinckrodt as a party. There is no just reason for delay as to Mallinckrodt Inc.

- Pursuant to M.R.Civ.P. 54(b)(1), judgment in favor of Mallinckrodt Inc. is final.

SO ORDERED.

DATED:    ~~December 31, 2008~~
          January 2, 2009

Thomas E. Delahanty II
Justice, Superior Court

11

K OF COURTS
erland County
O. Box 287
Maine 04112-0287

MARK LAVOIE ESQ
PO BOX 4600
PORTLAND ME 04112



K OF COURTS
erland County
O. Box 287
Maine 04112-0287

JAMES BOWIE ESQ
PO BOX 4630
PORTLAND ME 04112

ELIZABETH STOUDER ESQ
PO BOX 9545
PORTLAND ME 04112



ɔUX ʑ0/
ne 04112-0287

THIMI MINA ESQ
12 CITY CENTER
PORTLAND ME 04101



ine 04112-0287

DANIEL LILLEY ESQ
PO BOX 4803
PORTLAND ME 04112



STATE OF MAINE
CUMBERLAND, ss.



NANCY JORDAN AND ROBERT,
JORDAN, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATE OF SETH JORDAN

    Plaintiffs

v.                                                    DECISION AND ORDER

CAP QUALITY CARE, INC.,
STEVEN COTREAU, DR. STEVEN KEEFE,
AND DR. MARC SHINDERMAN

    Defendant

## BEFORE THE COURT

This matter came before the court March 10, 2009 for a non-testimonial hearing on the motions for summary judgment filed by defendants Cap Quality Care, Steven Cotreau, Dr. Marc Shinderman, and Dr. Steven Keefe. Based on the entire record, the court denies the defendants' motions in part, and grants the motions with respect to certain claims as specified in the following discussion.

## PROCEDURAL HISTORY AND BACKGROUND

This case arises out of the death of Seth Jordan (Jordan) on April 14, 2002. He was found dead in his apartment in Portland on that date. A medical examiner determined that he died of methadone poisoning.

Defendant Cap Quality Care (CAP) is a methadone clinic in Westbrook, Maine. CAP sells and dispenses methadone, a synthetic opioid, to individuals on methadone maintenance for opiate addiction. Three CAP employees, Steven Cotreau (Cotreau), Dr. Steven Keefe (Keefe), and Dr. Marc Shinderman (Shinderman), are also named as defendants in this action. The plaintiffs Nancy

and Robert Jordan (the Jordans) and Robert Jordan as personal representative of the estate of Seth Jordan filed an initial complaint on April 13, 2004. An amended complaint was filed in November 2004 that alleges numerous claims against CAP, Cotreau, Keefe, and Shinderman for Seth Jordan's death.[1]

Jordan obtained methadone from a friend (Patient 1) who had been receiving methadone treatment from CAP for approximately two months prior to the incident. On the Saturday night of Jordan's death, Patient 1 shared his take-home dose of methadone with Jordan. Because CAP was closed on Sunday, CAP personnel provided Patient 1 with a take-home dose to self-administer the following Sunday.[2] The 260 milligram take-home dose was distributed to Patient 1 in the form of six and a half dissolvable wafers, with water added to them at CAP, and was intended for consumption in liquid form. Before sharing the drug with Jordan, Patient 1 mixed part of the full dose with more liquid.

CAP provides patients with methadone safety information and warnings during the initial orientation, as well as in consent forms, and during counseling

---

[1] Mallinckrodt Inc. (Mallinckrodt) was initially named as a defendant. Mallinckrodt is a manufacturer of methadone and was the exclusive provider of methadone to CAP at the time in question. Mallinckrodt's involvement in this action was terminated when this court granted Mallinckrodt's motion for summary judgment on all claims by order dated January 2, 2009.

The counts alleged against CAP, Cotreau, Keefe, and Shinderman include negligence (Counts I and II); negligent design defect (Count IV); negligent failure to warn (Count VI); negligent infliction of emotional distress (Count VII); strict liability design defect (Count IX); strict liability failure to warn (Count XI); breach of implied warranty of merchantability (Count XIV); breach of implied warranty of fitness of particular purpose (Count XV); wrongful death (Count XVI); punitive damages (Count XVII); and joint enterprise and/or joint venture (Count XX). The additional count of vicarious liability (Count XVIII) was alleged against CAP exclusively.

[2] At all material times, federal and state law permitted methadone maintenance treatment facilities to provide patients with a single take-home dose of methadone for a day that the clinic is closed for business, including Sundays and holidays. 42 C.F.R. § 8.12(i).

2

sessions with patients. In addition, licensed pharmacists prepare the take-home bottles and each bottle is labeled with the patient's name, address, and daily dose. The label also states that "[f]ederal law prohibits the transfer of this drug to any person other than the patient for whom it is prescribed." Other than this label, the take-home doses distributed by CAP do not contain warnings or any information on the risks involved with diversion.

The parties disagree on the extent and efficacy of the safety information and warning provided by CAP. It is clear, however, that Patient 1 disregarded any warnings that were imparted when he provided Jordan with his methadone. Following Jordan's death, on October 10, 2002, Patient 1 was indicted on charges of manslaughter and furnishing a scheduled drug in connection with Jordan's death. On January 15, 2004 pursuant to a plea bargain, Patient 1 was convicted of furnishing a scheduled drug to Jordan and sentenced to four years in prison.

The defendants raise multiple grounds for summary judgment.[3] The following discussion will focus on the primary issues of contention, which are (1)

---

[3] Defendant Keefe raises the following grounds for summary judgment: (1) he owed no duty to Seth Jordan; (2) the claims are barred by Seth Jordan's criminal conduct; (3) lack of proximate causation; (4) Keefe was not a "seller" of methadone as required for claims of breach of warranty; (5) a lack of expert testimony to prove defective design; (6) Patient 1 received adequate warnings of methadone's dangers; (7) a lack of evidence that the methadone taken by Seth Jordan deviated from any warranty of merchantability; (8) a lack of evidence that the methadone taken by Seth Jordan was not accompanied by a warranty of fitness for a particular purpose; and (9) Keefe was not part of a joint venture with the other defendants.

The defendants CAP, Cotreau, and Shinderman filed a separate motion for summary judgment raising the following arguments: (1) that they owed no duty of care to Seth Jordan; (2) lack of proximate causation; (3) the claims for negligence are barred by Seth Jordan's criminal conduct; (4) they are not "sellers" of methadone as required for claims of breach of warranty; (5) the plaintiffs cannot prove the elements of the design defect and failure to warn claims; (6) limitations on the scope of a physician's duty apply with equal force to the plaintiffs' products liability and warranty claims; (7) the products/warranty claims are barred by Seth Jordan's criminal conduct; (8) the negligent infliction of emotional distress fails because it is subsumed by the wrongful

3

whether the defendants owed a duty to Jordan; (2) whether the record supports a finding of proximate causation; (3) whether the plaintiffs have presented a prima facie case for the product liability claims; (4) whether the claim for negligent infliction of emotional distress (NIED) is subsumed by the wrongful death claim; and (5) whether punitive damages are recoverable.

## DISCUSSION

### 1. Standard of Review.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

---

death claim; (9) the wrongful death claim fails because the other claims fail; (10) the vicarious liability claim, the concert of action claim, and the joint enterprise/joint venture claim fail because of a lack of liability on all the other claims; and (11) the punitive liability claim fails due to a lack of malice.

4

## 2. Negligent Failure to Warn

Methadone is a product that requires suppliers to warn expected users of the drug's inherent dangers and risks. Accordingly, the regulations impose restrictions on take-home doses of methadone, reflecting concerns that individuals dependent on or addicted to other drugs pose risks to the public and themselves when provided with a substance like methadone, which has the potential for abuse and diversion. 42 C.F.R. § 8.12(i).

A duty to warn arises when the supplier "knew or should have known of a danger sufficiently serious to require a warning." *Williams v. Iverson Corp.*, 664 A.2d 1244, 1249 (Me. 1995) (quoting *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). The general rule is that "the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier had reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user." *Pottle*, 628 A.2d at 675. As to negligent failure to warn claims, a plaintiff must establish the same elements as a standard negligence action under Maine law. A failure to warn claim requires a three-part analysis: (1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury. *Id.* The defendants argue that the Jordans have not provided a prima facie case for failure to warn because they failed to establish the required elements.

### A. Does Illegal Conduct Bar Recovery?

The defendants assert that it did not owe a duty to Jordan because it runs contrary to public policy to hold healthcare professionals liable for not providing a warning to illegal users. According to the defendants, Maine public policy bars

claims resulting from illegal conduct, and the possession of methadone without a prescription is a crime under both state and federal law.

The plaintiffs argue the defendants owe a duty to warn all expected users of the drug and that Jordan's illegal use of the drug does not eliminate that duty. They point out that Jordan's initial possession of methadone before ingesting the drug was only a non-violent misdemeanor offense.[4] Further, they assert that the illegal act of possessing methadone did not cause Jordan's death. Rather the defendants' failure to warn Jordan was the reason for his death.

The general rule denying contribution to intentional tortfeasors originated with the English case of *Merryweather v. Nixan*, 8 Term Rep. 186, 101 Eng. Rep. 1337 (1799). The Law Court later adopted the rule stating that, "the law will not lend its aid to him who founds his cause of action upon an immoral or illegal act. It leaves him where it finds him." *Hobbs v. Hurley*, 117 Me. 449, 451, 104 A. 815, 816 (1918). At the same time, the Court embraced an exception to that rule, holding that contribution among joint tortfeasors is allowed when the party is not an intentional and willful wrongdoer. *Id.* at 816. The Court has stated that, "[t]he purpose of the exception is to avoid the unjust results that might follow from rigid application of the noncontribution rule." *Bedard v. Greene*, 409 A.2d 676, 678 (Me. 1979).

The Law Court has not directly addressed whether and in what circumstances plaintiffs may seek relief based on injury caused in part by their own illegal conduct. The defendants cite to an Iowa case in making their argument that public policy denies relief to those injured because of their own

---

[4] Under Maine law, a person guilty of unlawful possession of a schedule X drug has committed a Class D crime. 17-A M.R.S. § 1107-A(D).

illegal acts. *Pappas v. Clark*, 494 N.W.2d 245 (Iowa App. 1992). However, the *Pappas* Court makes its holding with respect to "those injured in the course of committing a serious criminal act." *Id.* at 248 (citing *Barker v. Kallash*, 63 N.Y.2d 19, 468 N.E.2d 39, 479 N.Y.S.2d 201 (1984)). Furthermore, other jurisdictions have rejected the serious misconduct bar to recovery. *See Goldfuss v. Davidson*, 679 N.E.2d 1099, 1104 (Ohio 1997) (recognizing the ability of a person injured while engaged in criminal conduct to recover in tort); *Kelly v. Moguls*, 632 A.2d 360, 363 (Vt. 1993) (rejecting the argument that allowing a claim for injury to an imbiber-victim would permit an individual to profit from his own wrongdoing); *see also* RESTATEMENT (THIRD) OF TORTS § 7 cmt. d (2000) (advocating comparative fault "even though a party's conduct violated a statute . . . unless the purpose of the statute . . . is to place the entire responsibility for such harm on the party").

Based on the summary judgment record, Jordan's misconduct did not intentionally threaten the safety of others, nor was it felonious. Whether or not Jordan was an intentional and willful wrongdoer when he ingested the methadone is disputed. Unlike the serious misconduct by the plaintiff in *Pappas*, which included forgery and misrepresentation, the plaintiff in the instant case engaged only in the misdemeanor offense of unlawful possession. While Jordan did break the law, it was a misdemeanor offense; and, to completely bar his chance of recovery, if the defendants have committed a more serious wrong, may create an unjust result. In any event, the court does not wish to engage in a subjective and selective analysis of how wrong or blameworthy Jordan's conduct was. This is a question more suitable for the fact finder. Questions of relative fault are better addressed under the comparative negligence statute, 14 M.R.S. § 156 (2008).

## B.    Duty to Third Parties

The defendants do not dispute the fact that methadone is foreseeably diverted to non-patients nor that methadone is potentially dangerous. Instead the defendants make the argument that they do not owe a duty to non-patients as third parties.

In *Joy v. Eastern Maine Medical Center*, the Law Court held that under certain circumstances a hospital and physician's duty to warn patients for their own safety may extend to people injured by their patients. 529 A.2d 1364, 1365 (1987). In that case a healthcare professional failed to warn his patient not to drive while wearing an eye patch after treatment, and the patient was then involved in a motor vehicle collision that injured the plaintiff. *Id.* The Court held that "when a doctor knows, or reasonably should know that his patient's ability to drive has been affected, he has a duty to the driving public as well as to the patient to warn his patient of that fact." *Id.* at 1366. Duty is "a question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Id.* at 1365 (quoting W. L. Prosser, Law of Torts § 53 (4th ed. 1971)).

Conversely, the Law Court found there was no duty of care owed by a healthcare professional to a third party non-patient in *Flanders v. Cooper*, 1998 ME 28, ¶ 14, 706 A.2d 589, 592. The plaintiff filed suit against a physical therapist who allegedly induced false memories of sexual abuse by the plaintiff when treating the plaintiff's daughter. *Id.* at ¶ 2. The healthcare professional whose treatment of the patient may have been negligent did not owe a duty of care to the injured third party. *Id.* at ¶ 14. The Court distinguished *Flanders* from *Joy*, which dealt only with the aftermath of treatment, as opposed to negligence during treatment. *Id.* at ¶ 8. In *Flanders*, the duty was a duty of medical

8

treatment that went to the core of the relationship between a patient and a healthcare professional. *Id.* In contrast, a physician's duty to the driving public to warn the patient of the risks of driving does not implicate the treatment decisions of the physician. *Id.*

The instant case implicates *Joy* more than it does *Flanders*. Here, the plaintiffs allege that the defendants owe a duty to warn patients and that this duty extends to third parties who are foreseeably at risk due to a failure to warn their patients. This action involves the aftermath of treatment, a duty to warn patients, and the potential risk to third parties. The plaintiffs' underlying assertion is that the defendants were negligent in failing to provide adequate warning of the reasonably foreseeable risk of diversion to third parties. Any argument that the defendants were negligent in their treatment of Patient 1 is secondary to this primary contention. Even if the defendants were not negligent in their treatment of Patient 1, they may have been negligent in failing to provide him with adequate warning, and that negligence may extend to Jordan. Extending a duty to a non-patient third party who is injured because a patient diverted methadone without adequate warning from the defendant will not create a new or different standard of care. This is so because the physician's duty to the third party derives from the physician's duty to the patient. As healthcare professionals, particularly those who are dispensing a dangerous and addictive drug like methadone, the defendants owe a duty to all expected users to provide adequate warning to the extent that they are reasonably able to do so.

C. **Adequate Warning**

The defendants also argue that the warning they provided to their methadone patients was adequate. It is not disputed that CAP provides patients

9

with methadone safety information and warnings during the initial orientation, as well as in consent forms, and during counseling sessions with patients. However, the parties have provided contradictory facts as to the extent and efficacy of the orientation and the information sharing with patients that actually occurs. Summary judgment is therefore not appropriate on this issue.

### D.    Proximate Causation

In order to recover under a negligence theory, it is essential that the plaintiff prove that the defendants' negligent conduct proximately caused the plaintiff's injuries. *Ames v. Dipietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992). Proximate cause requires a showing that "the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing injury or damage . . . ." *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780-81. The Law Court has defined proximate cause as "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred," *Ames*, 617 A.2d at 561 (quoting *Johnson v. Dubois*, 256 A.2d 733, 734 (Me. 1969)). However, the mere occurrence of an intervening cause does not automatically break the chain of causation stemming from the original actor's conduct. *Ames*, 617 A.2d at 561. In order to break that chain, the intervening cause must also be a superseding cause, that is, neither anticipated nor reasonably foreseeable. *Id.*

Whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries "is generally a question of fact, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759.

According to the defendants, Jordan's illegal use of methadone was an intervening and proximate cause of Jordan's death. This argument is weakened by the fact that the defendants acknowledge that methadone is foreseeably diverted to non-patients. If Jordan's illegal use is reasonably foreseeable, it is not a superceding cause that would break causation. The plaintiffs have presented a prima facie case for negligent failure to warn. Accordingly, the defendants' motions for summary judgment should fail on Count VI.

### 3. Negligence

In addition to the claim for negligent failure to warn, the plaintiffs pursue negligence claims against the defendants (Counts I and II). A prima facie case of negligence requires a plaintiff to establish that a duty of care is owed, there was a breach of that duty, and that an injury to the plaintiff occurred that was proximately caused by the breach of duty. *Bonin v. Crepeau*, 2005 ME 59, ¶ 9, 873 A.2d 346, 348. According to the complaint, the defendants breached their duty of care by failing to take reasonable steps to ensure that take-home doses of methadone sold and dispensed to patients were not diverted to other persons.

The plaintiffs may not pursue a negligence claim based on specific diagnosis and treatment decisions relating to Patient 1's treatment. *See Flanders*, ¶ 8, 706 A.2d at 591. However, the plaintiffs argue that the negligence claims are based on general, clinic-wide operations, as opposed to individual treatment decisions. Just as the plaintiffs have provided a prima facie case for the failure to warn claims, they have provided sufficient evidence to withstand summary judgment on the negligence claims.

11

### 4. Strict Liability Product Claims

Strict liability claims for defective design require the defendant to be a seller of the defective product pursuant to 14 M.R.S. § 221 (2008).[5] Similarly, claims for breach of warranty require the defendant to be a merchant or seller. See 11 M.R.S. § 2-314 (2008);[6] 11 M.R.S. § 2-315 (2008).[7] The defendants argue that because they are not sellers of goods subject to 14 M.R.S. § 221 and the warranty provisions of the Uniform Commercial Code (UCC), the plaintiffs cannot succeed with their strict liability products claims.

The question turns on whether healthcare professionals are deemed sellers for purposes of strict liability. The Law Court has not pronounced whether physicians and dentists can be considered "sellers" pursuant to product liability statutes. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996).

---

[5] Maine's statute on strict liability states:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2008).

[6] The warranty of merchantability statute provides that "[u]nless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 11 M.R.S. § 2-314 (2008).

[7] Section § 2-315 pertains to warranty of fitness for a particular purpose and states that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 2-316, an implied warranty that the goods shall be fit for such purpose." 11 M.R.S. § 2-315 (2008).

This court determines that a doctor retained for services involving medical treatment, as a matter of law, is not a seller of products. *See Cafazzo Central Medical Health Servs.*, 542 Pa. 526, 668 A.2d 521, 525 (Pa. 1995) (healthcare providers are not sellers of goods under either the UCC or the Restatement because the primary activity is service and not the sale of goods and because public policy dictates this result). Therefore, summary judgment for the defendants on the strict liability and warranty claims is proper.

## 4. Design Defect Claims

The plaintiffs argue that methadone in its liquid form is defective in its design and unreasonably dangerous. In product design defect actions, "negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm." *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983). In order to withstand summary judgment, the plaintiffs must present evidence that liquid methadone is defective and unreasonably dangerous, and that the defect caused the harm to Jordan. *See Guiggey v. Bombardier*, 615 A.2d 1169, 1172 (Me. 1992). In assessing design defect claims, Maine courts apply the danger/utility test, which requires the fact finder to weigh the utility of the product against the danger it presents. *Id.*

The defendants argue the Jordans have not provided evidence supporting their argument that selling methadone in liquid form constitutes a design defect. The expert affidavit testimony submitted by the Jordans does not discuss whether methadone in its liquid form is defective. The Jordans contend that expert opinion is not required for this claim to be actionable because it does not

take special knowledge or skill to understand the obvious design defect alleged.[8]

With respect to medical negligence cases, the Law Court has recognized that "'where the negligence and harmful results are sufficiently obvious as to lie within common knowledge,'" expert medical testimony is unnecessary. *Forbes*, 552 A.2d at 17 (quoting *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954)).

Beyond the Jordans' conclusive assertion that it is easier to overdose on methadone in its liquid form because it is difficult to gauge the amount being ingested, they have not adequately explained what makes the defective nature of liquid methadone sufficiently obvious. The Jordans claim that a drug user who receives a diverted liquid form methadone dose will foreseeably drink all of the dose or that attempts to divide the dose into lower quantities will not and cannot be done. This argument is not persuasive.

Whether or not liquid form methadone is defective is not obvious or necessarily based in common knowledge. Federal treatment standards set forth by the Department of Heath and Human Services do not prohibit the unsupervised administration of methadone in its liquid form. See 42 C.F.R. § 8.12 (2008). CAP's policy statement on take-home doses of methadone provides that, "[l]iquefying the medication discourages diversion, promoting a positive community perception of our clients and clinic." Based on the submitted evidence, common knowledge appears to be divided as to whether liquid methadone or tablet methadone is preferable. Thus, it is not sufficiently obvious

---

[8] The Maine Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." M.R. Evid. 702.

14

that liquid methadone is defective and the plaintiffs have failed to adequately support their argument.

### 5. Negligent Infliction of Emotional Distress (NEID)

The defendants argue that Maine's wrongful death statute subsumes any other claims for emotional distress. Maine's wrongful death statute provides, in pertinent part:

> The jury . . . may give damages not exceeding $ 500,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim, to the persons for whose benefit the action is brought . . . .

18-A M.R.S. § 2-804 (2008).

The statute "explicitly states that the maximum recovery includes all emotional distress damages arising from the same facts." *Carter v. Williams*, 2002 ME 50, ¶ 14, 792 A.2d 1093, 1098. Because the NIED claim is based on the same facts as the wrongful death claim, the plaintiffs may not pursue NIED claims separate from the wrongful death claim.

### 6. Punitive Damages

To award punitive damages, a court must find, by clear and convincing evidence, that malice existed. *Morgan v. Kooistra*, 2008 ME 26, ¶ 29, 941 A.2d 447, 455; *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me. 1985). Malice is proven by evidence that a party acted with ill will toward the plaintiff or that the conduct was so outrageous that malice can be implied. *Tuttle*, 494 A.2d at 1361. Punitive damages are not recoverable for gross negligence or reckless indifference. *See Batchelder*, 2007 ME 25, ¶ 13, 914 A.2d at 1125; *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me. 1993); *Spickler v. Key Bank of Southern Maine*, 618 A.2d 204, 207 (Me. 1992).

15

Viewing the facts in a light most favorable to the plaintiffs, they have not demonstrated that the defendants acted with malice. Even if the defendants were grossly negligent, or even reckless, in administering adequate warning of the risk of diversion, this does not constitute malice as required for an award of punitive damages.

## CONCLUSION

It is hereby ORDERED as follows:

The defendants' motions for summary judgment are DENIED on the following counts: negligence (Counts I and II); negligent failure to warn (Count VI); wrongful death (Count XVI); joint enterprise and/or joint venture (Count XX); and vicarious liability as alleged against CAP exclusively (Count XVIII).

The defendants' motions for summary judgment are GRANTED on the following counts: negligent design defect (Count IV); negligent infliction of emotional distress (Count VII); strict liability design defect (Count IX); strict liability failure to warn (Count XI); breach of implied warranty of merchantability (Count XIV); breach of implied warranty of fitness of particular purpose (Count XV); and punitive damages (Count XVII).

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: March 16, 2009

Joyce A. Wheeler, Justice

16



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR C

142 FEDERAL STREET
PORTLAND, MAINE 04101

CHRISTOPHER TAINTOR ESQ
MARK LAVOIE ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

KAREN WOLFRAM ESQ
DANIEL LILLEY ESQ
DANIEL G LILLEY LAW OFFICE
PO BOX 4803
PORTLAND ME 04112



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

THIMI MINA ESQ
MICHAEL CUNNIFF ESQ
12 CITY CENTER
PORTLAND ME 04101



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

JAMES BOWIE ESQ
ROBERT HATCH ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630